## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | § | Case No. <u>20-30077-bjh13</u> |
| | § | (Chapter 13) |
| **Jakim Edward Pearson, Sr.,** | § | |
| | § | |
| **Debtor.** | § | |

### <u>RESPONSE TO ORDER TO SHOW CAUSE</u>

**TO: THE HON. BARBARA J. HOUSER; THOMAS POWERS/CHAPTER 13 TRUSTEE; THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**

**NOW COMES** Nicholas M. Wajda, counsel for the debtor Jakim Edward Pearson, Sr. ("Debtor"), and hereby responds to the Order to Show Cause dated April 9, 2020 at ECF No. 58. This response is based on the attached Declaration of Nicholas M. Wajda, as well as any documentary evidence attached hereto, and by such other facts, evidence, and argument as may be presented at the time of the hearing on this Order to Show Cause.

### FACTS

1. Debtor initiated the instant bankruptcy case *pro se* on January 6, 2020, by filing a voluntary petition under Chapter 13 of the United States Bankruptcy Code (the "Case").

2. A Notice of Deficiency was entered on January 6, 2020, which stated the Schedules A-J, Declaration about an Individual Debtors Schedules, Summary of Assets and Liabilities, Statement of Financial Affairs, Statement of Income/Means Test Form, Chapter 13 Plan, and Employee Income Records were due on January 21, 2020.

3. On January 21, 2020, Debtor filed his Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period, Statement of Financial Affairs, and Schedules A-J with Summary of Assets and Liabilities with Declaration About an Individual Debtors Schedules (ECF Nos. 9-11).

4. On January 21, 2020, Debtor filed a Motion to Extend Time to File Schedules or New Case Deficiencies to February 6, 2020 (ECF No. 12).

5. On January 27, 2020, the Court extended the deadline to file the Chapter 13 Plan and Employee Income Records to February 4, 2020 (ECF No. 13).

6. On February 5, 2020, Debtor contacted Nicholas M. Wajda ("Counsel") for a consultation and requested Counsel substitute in for the remainder of his Case, and to specifically file a Chapter 13 Plan that Debtor understood to be due on February 6, 2020.

7. After consulting with Debtor regarding his assets, debt, income and expenses, it was discovered that the deadline to file the Chapter 13 Plan had actually already passed, but Counsel agreed to substitute in for the remainder of the Case.

8. Debtor then spoke with Counsel's office and reviewed his assets, debts, income, and expenses, in order to formulate a Chapter 13 Plan which would be filed immediately that day.

9. Debtor communicated he owned the real estate located at 1959 Carrington Court, Stone Mountain, GA 30087 ("Property"), and that there was a mortgage secured by the Property owed to SunTrust Bank with an outstanding balance of approximately $900,000.00.

10. Debtor communicated that he was behind approximately eighteen months on his mortgage payments to SunTrust Bank.

11. Debtor communicated that he was employed as an Operations Manager for Overton National Transportation, earning approximately $6,000.00 take home pay per month.

12. Debtor communicated he also received $1,700.00 in rental income per month from his adult children.

13. Debtor communicated that after monthly expenses (not including the ongoing mortgage payments), he had approximately $5,826.00 leftover each month, with which he would fund the Chapter 13 Plan.

14. The Chapter 13 Plan was sent to Debtor for signature on February 5, 2020.

15. Debtor signed it, and Counsel's office instructed Debtor to return the signature page that day.

16. Due to the emergency nature of the already-passed deadline to file the Chapter 13 Plan, Debtor filed the Chapter 13 Plan with Debtor's electronic signature on February 5, 2020 (ECF No. 22).

17. The Chapter 13 Plan proposed monthly plan payments of $5,826.00, which would cure the pre-petition arrearage of $72,000.00, the post-petition arrearage of $8,000.00, and which would provide for the ongoing monthly mortgage payments of $4,000.00.

18. Due to an inadvertent error with Counsel's software, the Chapter 13 Plan as filed contained a typo on page 1, which listed disposable income as $1,230.32.

19. On February 5, 2020, Debtor filed a Motion for Substitution of Attorney, which included the Disclosure of Compensation of Attorney for Debtor ("Rule 2016(b) Statement") (ECF No. 21).

20. The Rule 2016(b) Statement showed Debtor made a payment of $1,500.00 to Counsel, and also disclosed that "Wajda & Associates may use a local counsel at the 341(a) meeting. Approximately $100-$250 is paid for such appearances. This will result in no additional cost to the Debtor."

21. Due to the apparent impending deadline, Counsel and Debtor never met "in person."

22. Counsel and Counsel's office spent considerable time speaking with Debtor on February 5, 2020, and many other times subsequent to this date.

23. On February 6, 2020 Debtor filed the Employee Income Records (ECF No. 23).

24. On January 31, 2020, creditor Truist Bank, Successor By Merger to Suntrust Bank ("Truist Bank") filed a motion for relief from stay and motion for relief from co-debtor stay (ECF Nos. 15 and 16) (together "Motions for Relief").

25. At the time of the initial consultation, Counsel was not aware of all of the allegations made in the Motions for Relief.

26. After reviewing the Debtor's Schedules, Statement of Financial Affairs, and Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period (collectively, "Schedules") and the Motions for Relief, Counsel's office spoke with Debtor at length regarding the contents of the Motions for Relief, and that Truist Bank was requesting in rem relief and that the Case be dismissed with a bar on re-filing.

27. On February 10, 2020, Attorney William Rossini agreed to appear with Debtor at his Section 341(a) Meeting of Creditors on February 13, 2020 ("Meeting of Creditors").

28. Counsel sent Mr. Rossini Debtor's file, the Motions for Relief, and all information Counsel had at that time concerning Debtor's Case.

29. Mr. Rossini did not communicate to Counsel or Counsel's office that he was unprepared for the Meeting of Creditors.

30. Debtor was aware that an appearance attorney would be appearing with him at the Meeting of Creditors.

31. On February 10, 2020, the Chapter 13 Trustee filed a Motion to Dismiss with prejudice for five years (ECF No. 26).

32. On February 12, 2020, creditor 1st Source Bank filed a Motion to Dismiss (ECF No. 29.).

33. Debtor did not communicate to Counsel that 1st Source Bank was a creditor of his until after Counsel received notice of the Motion to Dismiss and Counsel's office contacted Debtor to discuss same.

34. On or around February 12, 2020, Counsel's office spoke with Debtor at length regarding the contents of the Trustee's Motion to Dismiss and 1st Source Bank's Motion to Dismiss, and that both the Trustee and 1st Source Bank were both requesting a five-year bar to re-filing.

35. The hearing on 1st Source Bank's Motion to Dismiss was set for February 20, 2020.

36. On February 12, 2020, Counsel's office spoke with Attorney Robert Nicoud regarding Debtor's Case, and about appearing at the hearings on the Motions for Relief and 1st Source Bank's Motion to Dismiss on February 20, 2020.

37. On February 13, 2020, Debtor attended the Meeting of Creditors with Mr. Rossini.

38. On February 13, 2020, the Chapter 13 Trustee filed a Notice of Intent to Dismiss for failure to make the first plan payment (ECF No. 31).

39. Subsequent to the Meeting of Creditors, Debtor communicated to Counsel's office that he would not be making the first plan payment.

40. On February 18, 2020, the Chapter 13 Trustee filed a Notice of Intent to Dismiss for failure to file the Authorization for Adequate Protection (ECF No. 36).

41. On or around February 18, 2020, Counsel's office spoke with Debtor at length regarding the contents of the Trustee's Notices of Intent to Dismiss.

42. Hearings on the Motions for Relief were set for February 20, 2020.

43. After reviewing the Motions for Relief, the Motions to Dismiss, and the Notices of Intent to Dismiss (collectively, the "Pleadings") with Counsel and Counsel's office, Debtor realized he would not be able to confirm or complete a successful Chapter 13 Plan and decided that it was in his best interest to not respond to the Pleadings and file a Motion to Dismiss the Case.

44. On February 18, 2020, Debtor filed a Motion to Dismiss the Case (ECF No. 38).

45. Debtor did not amend his Voluntary Petition, Schedules, or Statement of Financial Affairs.

46. A Motion to Extend the Automatic Stay or Impose the Stay was not filed.

47. On February 18, 2020, Mr. Nicoud agreed to appear on behalf of Debtor at the hearings on February 20, 2020, and Counsel's Office sent him copies of the Motions for Relief, 1st Source Bank's Motion to Dismiss, and the Debtor's Motion to Dismiss.

48. Counsel's office communicated Debtor's decision to not oppose the Motions for Relief or Motion to Dismiss to Mr. Nicoud.

49. Debtor was aware that an appearance attorney would be appearing at the hearings on February 20, 2020 and communicating his decision to not oppose the Motions for Relief or Motion to Dismiss.

50. Mr. Nicoud did not communicate to Counsel or Counsel's office that he felt unprepared for the hearings on February 20, 2020 at any time.

51. Neither Mr. Rossini or Mr. Nicoud filed a Rule 2016(b) Statement.

52. Counsel did not file any motion for approval of a postpetition retainer.

## ARGUMENT

53. This Case is an outlier and not representative of the typical bankruptcy cases Counsel is involved in.

54. Counsel does not typically substitute into active *pro se* Chapter 13 cases, and especially not the day before case opening documents are allegedly due.

55. Here, Debtor came to Counsel the day before he understood his Chapter 13 Plan was due (when in reality the deadline had already passed) and, based on the information provided by Debtor, Counsel's office worked with Debtor to draft a feasible Chapter 13 Plan which would allow him to cure the pre-petition mortgage arrears and maintain his monthly mortgage obligations moving forward.

56. Counsel's office spent considerable time on the phone with Debtor on the date of the initial consultation so that a successful Chapter 13 Plan could be drafted and filed as soon as possible, and the Case would not be dismissed.

57. While the Plan did contain an error as to Debtor's disposable income, Counsel respectfully asserts that the Plan on the whole not nonsensical when considered together with the with the information Debtor communicated to Counsel on February 5, 2020.

58. It was apparent to Counsel on February 5, 2020, that Debtor owned a home in another state that he wanted to save from foreclosure, and that Debtor had the income to fund a Chapter 13 Plan which would allow him to do so.

59. Because Debtor did not initially communicate the issues raised in the Motions for Relief, 1st Source Bank's Motion to Dismiss, or the Chapter 13 Trustee's Motions to Dismiss, Counsel had no reason to anticipate them.

60. After going through the Debtor's Schedules and the Pleadings in detail with Debtor and many conversations between Debtor and Counsel's office, it became apparent to Debtor and Counsel that the Case could not be moved forward and that a dismissal was in Debtor's best interest.

61. Counsel respectfully asserts that responding to the Pleadings would not have prevented the Case from being dismissed with prejudice, nor would a response prevent relief from stay from being granted.

62. Instead of continuing to utilize resources to prolong the Case's inevitable dismissal by amending the Schedules or filing a Motion to Extend the Automatic Stay or Impose the Stay, Counsel and Debtor agreed that the best option was to file a Motion to Dismiss the Case and not oppose any of the Pleadings.

63. Counsel's duty to the Debtor and indeed his only intent was to help the Debtor get the best outcome for his Case.

64. Subject to mandatory disclosure requirements, Counsel is required to maintain confidentiality of information acquired during the course of representation. "[A] lawyer shall not knowingly…use confidential information of a client to the disadvantage of the client unless the client consents after consultation." *See* Texas Disciplinary Rules of Professional Conduct 1.05(b).

65. Counsel has an ethical obligation not to use information to the detriment of the client, and Counsel did not want to put Debtor in a potentially unfavorable position as relates to the assertions contained in the Pleadings.

66. With respect to the use of appearance attorneys, Counsel respectfully disagrees that debtor representation is "farmed-out" to ill-informed attorneys.

67. As is standard practice with Counsel's firm, Debtor was informed that an appearance attorney would attend his Meeting of Creditors and any case hearings.

68. Counsel's office has an ongoing relationship with Mr. Rossini, and he attends many section 341(a) meetings of creditors with Counsel's clients.

69. Counsel asserts that Mr. Rossini was not ill-informed or unprepared for the Meeting of Creditors.

70. Here, Mr. Rossini was provided with Debtor's bankruptcy documents prior to the Meeting of Creditors, and he had all of the same information that Counsel had.

71. Mr. Rossini did not communicate to Counsel or Counsel's office that he felt ill-informed or unprepared for the Meeting of Creditors at any time.

72. There would have been no difference had Counsel appeared personally at the Meeting of Creditors.

73. Counsel also respectfully disagrees that Mr. Nicoud was ill-informed or unprepared for the hearings on February 20, 2020.

74. Mr. Nicoud received copies of the Motions for Relief and 1st Source Bank's Motion to Dismiss (collectively, the "Motions") prior to the hearing date and Counsel's office spoke with him at length on several occasions regarding the allegations in each of the Motions.

75. Debtor wished to allow his Case to be dismissed and understood that Mr. Nicoud would communicate same to the Court.

76. Mr. Nicoud did not communicate to Counsel or Counsel's office that he felt ill-informed or unprepared for the hearings on February 20, 2020 at any time.

77. Had Counsel appeared at the hearings on February 20, 2020, he would have stated the same – that Debtor would not be responding to the Motions, and that Debtor wished to allow the Case to be dismissed.

78. Regarding fees paid to appearance attorneys, Counsel will direct any appearance attorneys representing Counsel's clients from here on out to file their own Rule 2016(b) Statement(s).

79. With respect to Counsel's fees, Counsel admits that his failure to file a motion for approval of postpetition retainer was an oversight and will not happen again moving forward.

80. As discussed above, this Case is an outlier and Counsel typically receives fees prepetition.

81. The Rule 2016(b) Statement(s) was meant to transparently disclose the fees which had been paid to Counsel by Debtor.

82. If the Court so wishes, Counsel offers to refund the Debtor the fees paid in this Case, however Counsel notes that doing so may be rewarding a debtor who did not fully communicate the issues and complexities of this Case before Counsel agreed to represent him.

## CONCLUSION

83. Debtor did not immediately disclose the complexity of the Case and Counsel relied on the information communicated to him and his office by Debtor on February 5, 2020, to file what Counsel understood to be a feasible Chapter 13 Plan.

84. Counsel and Counsel's office spent many hours communicating with Debtor, going through Debtor's Schedules and the contents of each of the Pleadings as they were filed after Counsel became involved in Debtor's Case.

85. As outlined above, the totality of circumstances of this Case presented such that Debtor's best option was to not respond to the Pleadings and to allow the Case to be dismissed.

86. Debtor was not required to file amendments of his Voluntary Petition, Schedules, Plan, nor was he required to respond to the Pleadings.

87. Debtor understood that appearance attorneys would be appearing with him at the Section 341(a) Meeting of Creditors and on his behalf at the hearings on February 20, 2020.

88. The appearance attorneys Mr. Rossini and Mr. Nicoud were fully prepared for these appearances and never communicated otherwise to Counsel or Counsel's office.

89. Nothing would have been done differently had Counsel appeared at either the Section 341(a) Meeting of Creditors or at the hearings on February 20, 2020.

90. Moving forward, Counsel will direct any appearance attorneys representing Counsel's clients to file their own Rule 2016(b) Statement(s).

91. Should Counsel substitute in to an already active Case in the future, he will file a sufficient motion for approval of postpetition retainer.

92. Accordingly, Counsel states that the practices described herein are consistent with the Bankruptcy Code, Rules, and other applicable authority.

WHEREFORE, Nicholas M. Wajda prays that this Court release its Order to Show Case dated April 9, 2020, and for other just relief.

Date: April 30, 2020

/s/ Nicholas M. Wajda
Nicholas M. Wajda, Esq.
Wajda & Associates, P.C.
5430 Lyndon B Johnson Fwy, Ste 1200
Dallas, TX 75240
nick@recoverylawgroup.com
214–396–6008