

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 22, 2020**

_____
United States Bankruptcy Judge
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAKIM EDWARD PEARSON, SR. | § | CASE NO. 20-30077 |
| | § | (Chapter 13) |
| Debtor. | § | |

### ORDER RESOLVING MATTERS SET FORTH IN APRIL 9, 2020 SHOW CAUSE ORDER BY: (A) REQUIRING DISGORGEMENT OF FEES; AND (B) PRESCRIBING CERTAIN LIMITATIONS ON USE OF "APPEARANCE ATTORNEYS" BY ATTORNEY NICHOLAS M. WAJDA

On April 9, 2020, this court signed a Memorandum Opinion and Order Setting Show Cause Hearing, Pursuant to Local Bankruptcy Rule 2090-2(b), for June 29, 2020, at 1:30 P.M., and Directing Attorney Nicholas M. Wajda to Appear in Person (the "Show Cause Order")[1] in the above-referenced case ("Case"). The Case has now been dismissed, but the court reserved jurisdiction to address the Show Cause Order. The court set forth the pertinent facts undergirding the Show Cause Order in detail therein, which the court incorporates into this Order by reference.

---

[1] ECF Nos. 57 and 58.

In a nutshell, the court issued the Show Cause Order because of concerns regarding the professional conduct of the Debtor's attorney, Mr. Wajda. This troubling conduct included:

1. his acceptance of a $1,500 post-petition retainer without leave of court, in violation of paragraph 21(d) of the Standing Order Concerning All Chapter 13 Cases;[2]

2. his failure to amend the Debtor's Voluntary Petition, Schedules, SOFA, and Creditors Matrix, which were later revealed to be grossly incomplete and inaccurate;

3. his filing of a nonsensical Chapter 13 Plan; and

4. his not appearing at the Debtor's Section 341 meeting or a lengthy, contentious hearing on motions to lift stay and to dismiss the Debtor's case with prejudice (in connection with the latter, extremely troubling facts were alleged, and Mr. Wajda sent ill-prepared "appearance counsel" (whom Mr. Wajda directly paid $100-$250), which "appearance counsel" had never met or spoken with the Debtor, and simply agreed to dismissal of the Debtor's case).

The court also had concerns about Mr. Wajda's general *modus operandi* in this and numerous other consumer bankruptcy cases—specifically Mr. Wajda operates an Internet-Based Law Firm,[3] doing business as both Wajda & Associates, APC and Recovery Law Group, that solicits bankruptcy debtor-clients over the Internet (regardless of where a client is geographically located), prepares bankruptcy paperwork for the clients, and largely refers clients to local attorneys, physically in the client's home district, for appearances at Section 341 meetings and court hearings.

---

[2] General Order 2017-01 (Bankr. N.D. Tex. June 24, 2017).

[3] The court uses the term "Internet-Based Law Firm" to refer to a law firm (at least in the bankruptcy legal realm) that solicits clients through its Internet presence or Internet-advertising (without regard to where a client is located geographically), prepares bankruptcy paperwork for the client, and then largely refers a client to a local attorney (*i.e.*, an attorney physically located in the client's home district) for appearing at section 341 meetings and hearings. *See generally* Stephen W. Sather, Ethics and the Internet Law Firm, 35 Am. Bankr. Inst. J. 38 (December 2016) for a useful discussion of this phenomenon.

Mr Wajda is licensed in Texas but has his office in California and never meets with his clients in person.

The court held a hearing on June 29, 2020 on the Show Cause Order, at which time Mr. Wajda appeared by video and provided some brief testimony. Mr. Wajda also filed a Response to Order to Show Cause[4] on April 30, 2020 and a Post-Hearing Brief in Response to Order to Show Cause.[5] On August 10, 2020, the Chapter 13 Trustee filed a Reply to Mr. Wajda's Post-Hearing Brief.[6]

The court, after due consideration of the pleadings, the statements offered at the hearing on the Show Cause Order, and other relevant information on the docket, makes the following findings:

A. Although Mr. Wajda had filed 52 bankruptcy cases for consumer debtors in the Northern District of Texas, as of the date of the court's Show Cause Order, he has (according to his own representation) never actually appeared in court in the Northern District of Texas nor physically attended a Section 341 meeting.

B. Mr. Wajda has a "registered" office address in Dallas, but he is never there. He offices in Culver City, California.

C. Mr. Wajda did not check for any prior bankruptcy cases that might have been filed by the above-referenced Debtor before substituting in as his counsel. If he had, he would have discovered that there were many undisclosed cases (with problematic histories) and, according to Mr. Wajda, he would have "for sure" declined representation.[7]

---

[4] ECF No. 62.
[5] ECF No. 66.
[6] ECF No. 67.
[7] Show Cause Order Tr. 17:1-4.

3

D. Mr. Wajda represented that he talked to the Debtor many times (no proof) but cannot explain why the Debtor's significant case deficiencies were never addressed. The court finds it to be doubtful that Mr. Wajda actually talked to the Debtor many times. The court also finds it to be inexcusable that Mr. Wajda neglected to correct the significant deficiencies and inaccuracies in the Debtor's Schedules, SOFA, petition, and creditors matrix.

E. Mr. Wajda filed a Rule 2016(b) Statement indicating: (i) he had received a $1,500 postpetition payment from the Debtor; and (ii) he might use a local counsel at the 341(a) meeting and pay $100-$250 for such appearance, but he did not disclose who that might be.[8] He does not believe that he delegated legal matters to ill-informed attorneys. On the contrary, the court finds that this is precisely what Mr. Wajda did.

F. **Instead of awaiting the court's ruling on the Show Cause Order, Mr. Wajda has actually increased his presence in the Northern District of Texas. The court takes judicial notice that he has filed 27 new bankruptcy cases in the *past five months*, compared to the 52 cases that he filed in the 18 months preceding the Show Cause Order.**

G. As earlier mentioned, the background facts and findings set forth in this court's April 9, 2020 Show Cause Order [ECF No. 58] are incorporated herein by reference.

In light of the foregoing, the court concludes that Mr. Wajda should disgorge the $1,500 unauthorized, post-petition retainer he received and deposit it into the Registry of the Bankruptcy Court, and the Bankruptcy Clerk is thereafter directed to use the funds to make a donation to the

---

[8] In the cases Mr. Wajda has filed since the court signed the Show Cause Order, he has continued to submit the same type of Rule 2016(b) Statement, using the same language regarding "appearance counsel."

4

Dallas Volunteer Attorney Program. The court also concludes that Mr. Wajda should be barred from using "appearance counsel" as a routine matter in his consumer debtor cases in this District.

Mr. Wajda argues that use of "appearance counsel," on a regular basis by Chapter 13 debtors' counsel, should not be prohibited and is in no way improper. He has identified no legal authority to meaningfully contradict the legal authorities cited in this court's Show Cause Order. On the contrary, the court concludes that Mr. Wajda's regular use of "appearance counsel" in connection with his representation of Chapter 13 debtors is improper and signifies a conscious disregard of his clients. The occasional use of co-counsel by attorneys may be justified, on a case-by-case basis, when there is a genuine, unique need (*e.g.,* illness, scheduling conflict, or vacations)—and, if any payment is contemplated, when a Rule 2016(b) statement is filed for such specific co-counsel. But, the routine, regular delegation of duties to a third-party counsel, in the manner that Mr. Wajda has done, at least 52 times in this District (plus possibly another 27 times)—without ever appearing at a Section 341 meeting or a court hearing—does not reflect proper adherence to Mr. Wajda's fiduciary duties to his clients; does not satisfy the requirements imposed on counsel by Texas Disciplinary Rules of Professional Conduct 1.01(b)(1), (2) and 1.04(f); and does not meet the spirit of paragraph 21(e) of the Standing Order Concerning All Chapter 13 Cases regarding standard fees in a Chapter 13 bankruptcy case.[9] Accordingly,

It is HEREBY ORDERED that Mr. Wajda shall disgorge the $1,500 unauthorized, post-petition retainer by remitting a check to the Bankruptcy Clerk for the Northern District of Texas, within 15 days after entry of this Order.

---

[9] General Order 2017-01 (Bankr. N.D. Tex. June 24, 2017) (setting forth expectations for what tasks are contemplated in order for a debtor's counsel to earn the standard no-look fee).

It is FURTHER ORDERED that the Bankruptcy Clerk shall thereafter issue a $1,500 check to the Dallas Volunteer Attorney Program.

It is FURTHER ORDERED that Mr. Wajda is barred from using "appearance attorneys" as a routine matter when representing consumer debtors in the Northern District of Texas.

It is FURTHER ORDERED that, in the event Mr. Wajda needs to secure co-counsel due to an unforeseen event, he must disclose the identity of such co-counsel to his client, obtain his client's informed consent as to the limited engagement, and if any payment is contemplated, Mr. Wajda shall ensure that a Rule 2016(b) statement is filed for such specific co-counsel.

**IT IS SO ORDERED.**

### END OF ORDER ###